## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BRAL CORPORATION, | ) |
| | ) |
|     Plaintiff/Counterclaim Defendant, | ) |
| | ) |
|     v. | ) |
| | ) |
| JOHNSTOWN AMERICA CORPORATION, | )   CIVIL ACTION NO. 3:08-232 |
| | )   JUDGE KIM R. GIBSON |
|     Defendant/Counterclaimant, | ) |
| | ) |
|     v. | ) |
| | ) |
| KEITH DUNBAR *and* CHRISTOPHER CHEN, | ) |
| | ) |
|     Counterclaim Defendants. | ) |

## **MEMORANDUM AND ORDER OF COURT**

### I. **SYNOPSIS**

This matter comes before the Court on the Motions for Summary Judgment filed by Counterclaim Defendant Bral Corporation ("Bral"), Keith Dunbar ("Dunbar"), and Christopher Chen ("Chen") (Doc. Nos. 112; 116; 119). Counterclaimant Johnstown America Corporation ("JAC") opposes these motions. (Doc. Nos. 127; 129).[1] For the reasons that follow, the Court will **DENY** Counterclaim Defendants' motions.

### II. **JURISDICTION AND VENUE**

The Court has jurisdiction pursuant to 28 U.S.C. § 1332(a). Venue is proper under 28 U.S.C. § 1391(a)(2).

---

[1] JAC has filed a separate motion for summary judgment on Bral's amended complaint. This motion will be addressed by the Court in a separate memorandum because the claims are substantively different from those presented in the motions for summary judgment submitted by Bral, Dunbar, and Chen.

## III. BACKGROUND

This case arises from a contractual dispute between Bral, an Ohio-based importer of metal products utilized in the railroad industry, and JAC, a Delaware corporation with its principal place of business in Johnstown, Pennsylvania. JAC is a manufacturer of coal-carrying railroad cars. Dunbar formed Bral in 1983, and has acted as the company's President since its inception. (See Doc. Nos. 42 at ¶¶ 7-8; 101 at ¶¶ 7-8). Counterclaim Defendant Chen was an employee of either Bral or Duncay since the early 1990s (See Doc. No. 42 at ¶¶ 16-17). In 1996, Bral began supplying casting parts for JAC's manufacturing operations. (See Doc. No. 121 at ¶ 1; Doc. No. 128 at ¶ 1). Bral obtained casting parts to satisfy orders from JAC through an off-shore company, Duncay. (See Doc. No. 42 at ¶¶ 20-21). Duncay was a Cayman Islands corporation formed by Dunbar in 1995 and dissolved in 2009. (Id. at ¶¶ 9-12). By late 2003, JAC paid Bral approximately $1.23 per pound for casting parts imported by Bral. (See Doc. No. 121 at ¶ 5; Doc. No. 128 at ¶ 5). JAC was unaware of the existence of Duncay in Bral's supply chain.[2] (See Doc. No. 42 at ¶¶ 54-56, ex. C).

In 2003, another importing company, CMN, approached JAC with a competing quote for casting parts. (See Doc. No. 121 at ¶ 4; Doc. No. 128 at ¶ 4). CMN quoted a price of $0.85 per pound. (See Doc. No. 121 at ¶ 4; Doc. No. 128 at ¶ 4). JAC alleged that CMN sourced these parts at the Ningbo Daming Precision Casting Co., Ltd. ("Daming")—the same foundry that manufactured the parts supplied by Bral to JAC. (See Doc. No. 72 at ¶ 37). JAC questioned Bral about the price differential between that of Bral and that quoted by CMN. (See Doc. No. 72 at ¶ 41). In response, Dunbar, on behalf of Bral, provided documentation to reassure JAC that

---

[2] Bral supplied JAC with customs forms to illustrate that the price charge by Bral for the casting parts was fair. Evidence shows that these forms were falsified. When compared to forms actually filed with U.S. Customs Office, the copy supplied to JAC by Bral redacted the name Duncay and added Ningbo Trading. (See Doc. No. 42 ex. C). Dunbar admits to sending JAC the letter with a customs form attached, but denies that Exhibit A is a true and complete copy of the document transmitted by Bral to JAC.

2

their $1.23 per pound price was fair. (See Doc. Nos. 101 at 43-44, 42 at 43-44).[3] Bral admits that the documents provided by Dunbar, on behalf of Bral, "did not show the price Bral paid to Daming, but rather the price Bral paid to Duncay." (See Doc. Nos. 101 at 50, 42 at 50).

On September 29, 2008, Bral commenced the instant action by filing a Complaint against JAC, contending that JAC breached an exclusive supply agreement ("Supply Agreement") (See Doc. No. 1-4) by purchasing casting parts for its railroad cars from a competitor of Bral. (See Doc. No. 1). On April 7, 2010, JAC filed its Answer with Counterclaim against Bral, Dunbar, and Chen (collectively, "Counterclaim Defendants"), alleging that they participated in an elaborate scheme to deceive JAC, fraudulently overcharge it for casting parts, and interfere with its business relationship with one of Bral's competitors. (See Doc. No. 42). Specifically, in the counterclaims at issue, JAC asserts five counts: (1) breach of contract against Bral; (2) tortious interference with existing and prospective business and contractual relationships against Counterclaim Defendants; (3) fraud against Counterclaim Defendants; (4) fraud against Bral and Dunbar; and (5) unjust enrichment against Dunbar and Chen. (See Doc. No. 42 at 24-32).

Counterclaim Defendants moved to dismiss the Counterclaim, (Doc. Nos. 48; 55; 58), but these motions were mooted when JAC filed an Amended Answer with Counterclaim. (Doc. No. 72; see also Doc. No. 80). Subsequently, Counterclaim Defendants filed motions to dismiss all counts of the Counterclaim asserted in the Amended Answer. (Doc. Nos. 81; 83; 85). The Court denied Dunbar and Chen's motions on all counts, and granted Bral's motion in part as to Count I of the Counterclaim and denied on all other counts. (Doc. No. 98). On December 21, 2011, Counterclaim Defendants filed answers to the counterclaim. (Doc. Nos. 99; 100; 101). Lastly, Counterclaim Defendants moved for summary judgment on all remaining counts. (Doc. Nos.

---

[3] Dunbar's letter accompanying the documentation stated, "[a]s you can see, this clearly shows that Ningbo Foundry is charging [Bral] a much higher price level than the pricing area you mentioned today. We question the origin and validity of the prices you have been quoted." (Doc. No. 42 ex. A).

3

112; 116; 119). The motions have been fully briefed and are now ripe for disposition.

## IV. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) states that "a court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law" Fed. R. Civ. P. 56(a). In the words of the Third Circuit, "[s]ummary judgment is appropriate only where, drawing all reasonable inferences in favor of the nonmoving party, there is no genuine issue as to any material fact . . . and the moving party is entitled to judgment as a matter of law." *Melrose, Inc. v. Pittsburgh*, 613 F.3d 380, 387 (3d Cir. 2010) (quoting *Ruehl v. Viacom, Inc.*, 500 F.3d 375, 380 n.6 (3d Cir. 2007)); see also *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); FED. R. CIV. P. 56 (a).[4] Disputes of fact are genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); see also *McGreevy v. Stroup*, 413 F.3d 359, 363 (3d Cir. 2005). Material facts are those which will affect the outcome of the trial under governing law. *Anderson*, 477 U.S. at 248.

The moving party bears the initial responsibility of stating the basis for its motion and identifying those portions of the record which demonstrate the absence of a genuine dispute of material fact. *Celotex*, 477 U.S. at 323. If the moving party meets this burden, the party opposing summary judgment "may not rest upon the mere allegations or denials of the . . . pleading," but "must set forth specific facts showing that there is a genuine issue for trial." *Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001) (internal citations omitted); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); see also *Podobnik v. U.S. Postal Serv.*, 409

---

[4] Rule 56 was revised in 2010. The standard previously set forth in subsection (c) is now codified as subsection (a). The language of this subsection is unchanged, except for "one word—genuine 'issue' bec[ame] genuine 'dispute.'" FED. R. CIV. P. 56 advisory committee's note, 2010 amend.

F.3d 584, 594 (3d Cir. 2005) (noting that a party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted).

## V.    DISCUSSION

The motions of Counterclaim Defendants differ only somewhat with respect to individual counts: Chen contends that the Court must dismiss the counterclaims against Chen for lack of personal jurisdiction (See Doc. No. 120 at 5-12); each Counterclaim Defendant contends that counts II, III and IV are procedurally barred by applicable statutes of limitation; Bral and Dunbar assert that the Court should grant summary judgment as to counts II (tortious interference), III (fraud), and IV (fraud)[5] (See Doc Nos. 114 & 117); and lastly, Dunbar contends that JAC paid only what was due under the terms of the Supply Agreement and therefore the court should grant summary judgment as to Count V (unjust enrichment). (See Doc. No. 117 at 15; see also Doc. No. 138 at 6). The Court will address these issues in turn.

### 1.   Personal Jurisdiction: All Relevant Counts as to Counterclaim Defendant Chen

In his motion, Chen, a Canadian resident, asserts that this Court cannot exercise personal jurisdiction over him. (See Doc. No. 120 at 5-12). JAC disagrees. (See Doc. No. 127 at 2-8). As the Third Circuit has explained, "[p]ursuant to Federal Rule of Civil Procedure 4(k), a federal district court may assert personal jurisdiction over a nonresident of the state in which the court sits to the extent authorized by the law of that state." *Marten v. Godwin*, 499 F.3d 290, 296 (3d

---

[5] Although Counts II, III, and V are alleged against Counterclaim Defendant Chen, Chen's motion for summary judgment only addresses these counts on the bases of personal jurisdiction and the applicable statutes of limitations. As such, the analysis of Chen's motion falls under only these arguments. Bral and Dunbar assert additional arguments (to that of the statute of limitations) to the various counts. These additional arguments will not apply to Chen because they are not present in Chen's motion for summary judgment. See *infra*, note 11.

Cir. 2007) (quotation marks omitted); *Metcalfe*, 566 F.3d at 330. Pennsylvania's long-arm statute, 42 PA. CONS. STAT. ANN. § 5322(b), provides for jurisdiction "based on the most minimum contact with th[e] Commonwealth allowed under the Constitution of the United States." *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 316; *Marten*, 499 F.3d at 296. Accordingly, in determining whether personal jurisdiction exists, this Court must ask "whether, under the Due Process Clause, the defendant has 'certain minimum contacts with . . . [Pennsylvania] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *O'Connor* at 316 (alterations in original) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

These due process principles are reflected in the two types of personal jurisdiction: general and specific. *Marten*, 499 F.3d at 296. "General jurisdiction exists when a defendant has maintained systematic and continuous contacts with the forum state[,]" and "[s]pecific jurisdiction exists when the claim arises from or relates to conduct purposely directed at the forum state." *Id.* (citing *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408 (1984)). Instantly, Chen contends that JAC cannot meet its burden to establish either type of personal jurisdiction. (See Doc. No. 84 at 7-8). Although the Court previously denied Chen's motion to dismiss for lack of personal jurisdiction, such denial does not preclude further review on motion for summary judgment, assuming, as in this case, that the party has not waived the defense by "actually litigat[ing] the underlying merits or demonstrat[ing] a willingness to engage in extensive litigation in the forum." *In re Texas E. Transmission Corp. PCB Contamination Ins. Coverage Litig.*, 15 F.3d 1230, 1236 (3d Cir. 1994).

As the Court previously concluded in denying Chen's motion to dismiss, it now determines again that JAC has met its burden to establish specific jurisdiction and, therefore, will

6

not discuss general jurisdiction. Traditionally, "[s]pecific jurisdiction over a defendant exists when that defendant has 'purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities.'" *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 96 (3d Cir. 2004) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). However, the analysis differs slightly when the Court's jurisdiction over intentional tort claims is challenged. As this Court recently explained:

> With respect to specific jurisdiction over claims of intentional torts, the United States Court of Appeals for the Third Circuit has suggested that district courts should apply the "effects test," as established by the United States Supreme Court in *Calder v. Jones*, 465 U.S. 783, 104 S. Ct. 1482, 79 L. Ed. 2d 804 (1984). *Shafik*, 2010 U.S. Dist. LEXIS 60103, at *18 (citing *Manfredy*, 238 F.3d at 258; *Marten*, 499 F.3d at 297; *Miller Yacht Sales*, 384 F.3d at 99). Under the effects test, the plaintiff must show that: (1) the defendant committed an intentional tort; (2) the plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort; and (3) the defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity. *IMO Indus.*, 155 F.3d at 265-66. If a plaintiff satisfies these three elements, the plaintiff can "demonstrate a court's jurisdiction over a defendant even where the defendant's 'contacts with the forum alone are far too small to comport with the requirements of due process under the [Court of Appeals'] traditional analysis." *Marten*, 499 F.3d at 297 (quoting *IMO Indus.*, 155 F.3d at 259).

*Rychel v. Yates*, Civ. A. No. 09-1514, 2011 U.S. Dist. LEXIS 38824, at *43-44 (W.D. Pa. Apr. 11, 2011). While each element of the effects test must be met, "only if the 'expressly aimed' element of the effects test is met need we consider the other two elements." *Marten*, 499 F.3d at 297.

Instantly, Chen contends that JAC cannot satisfy its burden and establish specific jurisdiction over him with respect to the three counts in the Counterclaim against him: tortious interference, fraud, and unjust enrichment. (See Doc. No. 120). In his motion, Chen asserts that the Court's order (See Doc. No. 98) denying Chen's motion to dismiss was "based principally upon the presumption that [JAC]'s allegations . . . were true." (Doc. No. 120 at 6). However,

7

Chen's characterization does not comport with the FED. R. CIV. P. 12(b)(2) standard on which the court relied. As the Court previously emphasized, with respect to 12(b)(2) motions, courts must accept the non-moving party's allegations as true and construe disputed facts in his or her favor, see *O'Connor*, 496 F.3d at 316; *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F .3d 446, 457 (3d Cir. 2003), *but the non-moving party must ultimately "prov[e] by affidavits or other competent evidence that jurisdiction is proper."* *Metcalfe*, 566 F.3d at 330 (citations omitted) (emphasis added). See also *Sprague Energy Corp. v. Union Drawn Steel, II, LTD*, Civ. A. No. 07-962, 2008 U.S. Dist. LEXIS 20335, at \*7 (W.D. Pa. Mar. 12, 2008) ("[B]ecause a 12(b)(2) motion requires resolution of factual issues outside the pleadings, the *plaintiff may not rely on the pleadings alone to carry its burden* of establishing the jurisdictional facts.") (citations omitted) (emphasis added).

Accordingly, in denying Chen's motion to dismiss for lack of personal jurisdiction, the court did not *principally* rely on the pleadings, but rather found that Counterclaimant proved, with other competent evidence, that jurisdiction is proper. Specifically, the Court found that Counterclaimant supported its "allegations with portions of the transcript of Chen's deposition evincing Chen's involvement in the 'scheme,'" directly targeting Counterclaimant in the forum state. (See Doc. No. 98 at 8).[6] Like the allegations in the motion to dismiss, Chen's assertion that JAC "is unable to point to any facts showing contacts between Chen and the Commonwealth of Pennsylvania sufficient to establish the Court's jurisdiction,"[7] (Doc. No. 120 at 6) is directly countered by JAC's factual allegation that Chen ghost wrote letters on Daming letterhead, Chen "lobbied Daming to refuse to fill the purchase order," and Chen served as translator during the

---

[6] More precisely, the Court found that JAC's allegation of Chen's admission of being involved in the scheme was sufficiently evidenced in Chen's deposition whereby his actions of "actively working," "authoring multiple letters," and "participating in a conference call," sufficed as contacts necessary for personal jurisdiction. (See Doc. No. 98 at 11, n.8).
[7] As also asserted in Chen's Concise Statement of Material Facts ("CSMF") (Doc. No. 121).

8

meeting between Bral, Daming, and JAC.[8] (See Doc. No. 127 at 3). The Court finds that JAC has met its burden as the opposing party to Chen's motion for summary judgment because these factual disputes are essential to the determination of whether Chen exhibited the necessary contacts to find personal jurisdiction over him. As such, any disputed material facts will be left for trial.

Even further, as was shown in the Court's prior memorandum, drawing all reasonable inferences in favor of Counterclaimant, JAC has met its burden by sufficiently establishing personal jurisdiction under the effects test. To satisfy the effects test, JAC must demonstrate that Chen expressly and intentionally aimed his tortious conduct at Pennsylvania such that Pennsylvania can be said to be the focal point of the harm and "knew that the plaintiff would suffer the brunt of the harm caused by the tortious conduct in the forum." *Marten*, 499 F.3d at 297-98 (internal citations omitted). Counterclaimant presented evidence showing that Chen wrote letters to JAC on Daming company letterhead,[9] actively participated in a conference call between Daming and JAC in Pennsylvania, and received a script instructing him to "have a discussion with Mr. Ren in Chinese and tell Frank they feel very difficult, but will respond Monday." (Doc. No. 131-18). Further, Chen knew that JAC was located and operated its business in Pennsylvania. (See Doc. No. 120 at 10). On summary judgment, the above facts are sufficient to show under the effects test that Chen expressly aimed his intentional, tortious conduct at

---

[8] JAC alleges these facts as well in its responsive CSMF (See Doc. 128 at ¶¶ 26, 29, 31, 34-35, 40, 44-47). Accordingly, the disputed facts referred to in JAC's responsive CSMF to Chen's CSMF point to the depositions of Chen, JAC, and Bernatt and provide sufficient evidentiary basis to find JAC has met its burden to oppose Chen's motion by evidencing disputed material facts to be determined at trial.

[9] The parties dispute whether these letters are "ghost written" letters or proper translations of letters written on Ren's behalf. Chen argues that Ren's declaration directly refutes JAC's allegation that these letters were "ghost written," however, as discussed in greater detail below, JAC has presented evidence that places the credibility of Ren's declaration at issue. When credibility is "critical to summary judgment," a motion should be denied when a plaintiff has presented a *prima facie* case and sufficient grounds for possible impeachment. See *El v. SEPTA*, 479 F.3d 232, 237 (3d. Cir. 2007).

Pennsylvania, and knew the brunt of the harm would be felt by Counterclaimant in Pennsylvania.

Importantly, "the plaintiff can demonstrate a court's jurisdiction over a defendant even where the defendant's contacts with the forum alone are far too small to comport with the requirements of due process under the [Court of Appeals'] traditional analysis." *Marten*, 499 F.3d at 297 (internal quotation omitted). While the Court refuses to address whether Plaintiff has demonstrated facts sufficient with the requirements under the traditional due process analysis, the facts do suggest this case "arises from or relates to conduct purposefully directed at the forum state." *Kehm Oil Co. v. Texaco, Inc.*, 537 F.3d 290, 300 (3d Cir.2008).

JAC has met its burden in disputing material facts claimed undisputed by Chen. Additionally, JAC has the burden of establishing a *prima facie* case for specific personal jurisdiction, see *Metcalfe*, 556 F.3d at 330, and JAC has met this burden. Therefore, the Court will **DENY** Chen's motion for summary judgment on the basis of a lack of personal jurisdiction on all relevant counts.

## 2. Statute of Limitations: Counts II, III, and IV as to all Counterclaim Defendants

Counterclaim Defendants assert that JAC's claims under Count II (against Bral, Dunbar, and Chen), Count III (against Bral, Dunbar, and Chen) Count IV (against Bral and Dunbar) are procedurally barred because the applicable statutes of limitations have run and JAC's claims are not subject to any tolling exceptions. (See Doc. Nos. 114 at 15-22; 120 at 12-18; 117 at 17-24). Counterclaimant disagrees. It asserts that its claims under Counts II, III, and IV are timely due to the tolling of the relevant statutes of limitations under the discovery rule exception. (See Doc. Nos. 127 at 9-14; 129 at 22-26).

Under Pennsylvania law, the relevant statute of limitations on claims of either tortious interference or fraud is two years. 42 PA. CONS. STAT. § 5524(7). In Pennsylvania, a cause of

action accrues when the relevant statute of limitations begins to run "as soon as the right to institute and maintain a suit arises." *Fine v. Checcio*, 870 A.2d 850, 857 (Pa. 2005) (citations omitted); see also 42 PA. CONS. STAT. § 5502(a). "Once a cause of action has accrued and the prescribed statutory period has run, an injured party is barred from bringing his cause of action." *Fine*, 870 A.2d at 857 (citations omitted). Under Pennsylvania law, courts favor a strict application of statutes of limitations. *Knopick v. Connelly*, 639 F.3d 600, 606 (3d Cir. 2011) (citations omitted). However, several exceptions exist that act to toll a statute of limitations, *Fine*, 870 A.2d at 858, and "state tolling principles are used by a federal court when it is applying a state limitations period." *See Knopick v. Connelly*, 639 F.3d at 606. Among such exceptions include the "discovery rule and the doctrine of fraudulent concealment," in addition to the inherent fraud doctrine. *Fine*, 870 A.2d at 858. While the issue of whether the limitation period has run is a question of law, "where the issue involves a factual determination, the determination is for the jury." *Id.* at 857.

JAC filed its original Counterclaim alleging Counts II, III, and IV on April 7, 2010. (Doc. No. 42). Counterclaim Defendants assert that Counts II, III, and IV of the Counterclaim are procedurally barred by the applicable two year statute of limitations under 42 PA. CONS. STAT. § 5524. (Doc. Nos. 114 at 15-20; 117 at 17-22; 120 at 12-16). Further, Counterclaim Defendants argue that the discovery rule, inherent fraud doctrine and fraudulent concealment doctrine are not applicable as exceptions that would have tolled the relevant statutes of limitations. (Doc. Nos. 114 at 18-20; 117 at 22-24; 120 at 16-18). JAC disagrees and contends that each exception applies to toll the limitation period. (Doc. Nos. 127 at 9-14; 129 at 22-26). Specifically, JAC avers that under the discovery rule, the earliest it could have reasonably known about the underlying claims asserted in Counts II, III, and IV was in January 2010 when through

11

discovery in the instant lawsuit, it learned about the existence and ownership structure of Duncay during the depositions of Chen and Dunbar. (See Doc. Nos. 127 at 10-11; 128 at 9-10; 129 at 24; 130 at 9-10; 131-10 at 8, 12).

The discovery rule excludes the "period of time during which injured party is reasonably unaware that injury has been sustained so that people in that class have essentially same rights as those who suffer immediately ascertainable injury." *Hayward v. Med. Ctr. of Beaver Cnty.*, 608 A.2d 1040, 1043 (Pa. 1992). When the discovery rule applies, the statute of limitations does not begin to run until the injured party knows or in the exercise of reasonable diligence should have known of the injury and its cause." *Knopick*, 639 F.3d 600, 607 (quoting *Crouse v. Cyclops Indus.*, 745 A.2d 606, 611 (Pa. 2000)); *see Colonial Assur. Co. v. Mercantile & Gen. Reinsurance Co. Ltd.*, 297 F. Supp. 2d 764, 770 (E.D. Pa. 2003) ("A cause of action for tortious interference with contract accrues upon discovery of the allegedly interfering acts or when the allegedly interfering acts should have been discovered with reasonable diligence."). Importantly, the point at which a party should reasonably be aware of the injury and its cause is an *issue of fact* to be determined by the jury. *Hayward*, 608 A.2d at 1043. However, "where the facts are so clear that reasonable minds cannot differ," the court may determine the point at which a party should reasonably be aware as a matter of law. *Caleb v. CRST, Inc.*, 43 F. App'x 513, 516 (3d Cir. 2002) (quoting *Hayward*, 608 A.2d at 1043).

The Third Circuit has held that "reasonable diligence is an objective test." *Kach v. Hose*, 589 F.3d 626, 642 n. 17 (3d Cir. 2009). Thus, reasonable diligence is "what is expected from a party who has been given reason to inform himself of the facts upon which his right to recovery is premised." *Knopick*, 639 F.3d at 611 (quoting *Fine,* 870 A.2d at 858). "Where the plaintiff has no reason to investigate, the statute will be tolled." *Id.* at 612. "However, if something exists to

12

trigger the inquiry, then the plaintiff must demonstrate that he conducted an investigation, and despite doing so, did not discover his injury." *Id.*

Here, reasonable minds could differ as to whether JAC had reason to investigate further when JAC suspected that the letters it received were fraudulent. It is quite possible that JAC did not have reason to investigate further until it was made aware of the facts surrounding these allegations during the discovery period during late 2009 and early 2010. Reasonable minds could differ as to whether JAC's questioning of Bral regarding the price discrepancy and JAC's subsequent signing of the agreement in response to the conference call where Ren threatened to pull out as a supplier reasonably constituted "those qualities of attention, knowledge, intelligence, and judgment which society requires of its members for the protection of their own interests." *Knopick*, 639 F.3d at 611. It would seem equally possible that the circumstances surrounding the dealings of the parties may have been an impetus for JAC to have conducted further investigation at the time of the occurrence of the alleged claims. In other words, this Court finds that in this case, the facts are not so clear so as to allow for a scenario such that reasonable minds could not differ. In fact, the circumstances surrounding the application of the discovery rule in this case exhibit exactly the type of issues ripe for determination by the fact-finder in deciding whether the applicable statutes of limitations should be tolled on these claims.

Here, it is important to note that Bral withheld information about Duncay's role in the alleged scheme until a motion to compel was granted in another action. (See Doc. No. 129 at 23). Specifically, JAC did not know of the falsified customs document until November 2009, when JAC first learned of Duncay, and did not know of Duncay's role until after the motion to compel was granted and the deposition of Duncay in January 2010. Reasonable minds could find that the discovery of this information is the point at which JAC realized the causal link between the

suspicious letters allegedly "ghost-written" by Counterclaim Defendants and the price discrepancy. Also, reasonable minds could differ as to whether the discovery of the e-mail sent by Bral in advance of the conference call establishes that the opinions expressed by Chen during the conference call were actually those of Counterclaim Defendants, and whether that was the point at which JAC could reasonably be aware of the tortious interference and the causal connection between Bral, Duncay and Chen's conduct of the alleged harm. Given the existence of disputed facts, reasonable minds could disagree as to whether JAC knew or should have known of the alleged tortious interference and fraud in this case.

As such, this Court finds that there indeed does exist a genuine dispute as to material facts that would determine whether the discovery rule applies in this case. If applicable, this would then allow for a determination of whether the statute of limitations was appropriately tolled, thus providing a basis to find JAC's claims of tortious interference and fraud not to be time-barred. For these reasons, the Court finds that summary judgment in favor of Counterclaim Defendants on Counts II, III, and IV on the basis of the running of the applicable statutes of limitations would be premature in this case before allowing the fact-finder to make a proper determination as to the tolling period under the discovery rule exception.[10] Thus, the Counterclaim Defendants' motions for summary judgment on this basis will not be granted.

### 3. Count II: Tortious Interference

Counterclaim Defendants argue that summary judgment should be granted in their favor on JAC's claim of tortious interference alleged in Count II of the counterclaim. Under Pennsylvania law, a cause of action for tortious interference with contractual relations has the

---

[10] Additionally, it should be noted that because the Court found that there exists a triable issue of fact to defeat summary judgment as to the discovery rule exception, it need not yet discuss whether the other exceptions of fraudulent concealment and the inherent fraud doctrine apply because only one exception need apply for the applicable statute of limitations to be tolled on JAC's relevant claims.

14

following elements: (1) the existence of a contractual, or prospective contractual relation between the complainant and a third party; (2) purposeful action on the part of the defendant, specifically intended to harm the existing relation, or to prevent a prospective relation from occurring; (3) the absence of privilege or justification on the part of the defendant; and (4) the occasioning of actual legal damage as a result of the defendant's conduct. *CGB Occupational Therapy, Inc. v. RHA Health Serv. Inc.*, 357 F.3d 375, 384 (3d Cir. 2004); See also *Thompson Coal Co. v. Pike Coal Co.*, 412 A.2d 466, 471 (Pa. 1979).

Bral and Dunbar[11] assert that there is no genuine issue of material fact with respect to JAC's claim of tortious interference (Count II). (See Doc. No. 114). Counterclaim Defendants put forth three arguments in support of their motion: (1) the record lacks evidence to support that Bral and Dunbar acted with "specific intention to harm an existing contract or prevent a contractual relationship from occurring," (2) "Johnstown cannot demonstrate with reasonable probability that a prospective contractual relation between Johnstown and CMN would have been established," and (3) JAC's claims against Bral and Dunbar are precluded by the business competition privilege. (See Doc. No. 114 at 6-10). JAC disagrees. (See Doc. No. 129 at 2-14). The Court will address each argument in turn.

---

[11] Arguments in support of summary judgment as to Count II were put forth by Bral and Dunbar, but not Chen, although it is alleged against Chen. (See Doc. No. 114). Counterclaim Defendant Chen asserts that summary judgment should be entered in his favor on Count II of the Counterclaim on the bases of lack of personal jurisdiction and the relevant statute of limitations. As analyzed above in Section V.1 and V.2, the Court did not grant summary judgment on these bases. While Count II also applies to Chen as set forth in JAC's Counterclaim, Chen does not make the additional argument in his motion for summary judgment as do Bral and Dunbar. (See Doc. No. 120). Importantly, the moving party bears the initial responsibility of stating the basis for its motion and identifying those portions of the record which demonstrate the absence of a genuine dispute of material fact. *Celotex*, 477 U.S. at 323.

15

### a. Specific intention to harm an existing contract or prevent a contractual relationship from occurring

Bral and Dunbar assert that summary judgment is warranted because JAC has presented insufficient evidence that Bral and Dunbar purposefully acted to prevent Johnstown and CMN from entering into a contractual relationship. (See Doc. Nos. 114 at 7; 117 at 7). Their argument focuses on a lack of evidence supporting Bral and Dunbar's involvement in threats made by Ren, the President of Daming. (See Doc. Nos. 114 at 7-10; 117 at 7-10). Bral and Dunbar contend that the threats, both written and verbal, "originated with and emanated from Ren and Daming . . . and that Bral never suggested to Ren that he make these statements." (Doc. Nos. 114 at 9-10; 117 at 9-10). Finally, Bral and Dunbar contend that, notwithstanding the communications from Ren, JAC's course of conduct demonstrates that it did not rely on the statements from Ren and continued to pursue and enter into business agreements with CMN. (See Doc. No. 114 at 9).

In this case, counterclaimant has pointed to sufficient facts within the record evidencing a genuine issue of material fact regarding Bral and Dunbar's specific intent to harm a prospective contractual relationship, thus satisfying its burden on motion for summary judgment. Specifically, JAC directs the Court to an e-mail sent by Dunbar to Chen on March 25, 2004, which contained specific instructions on how Chen should respond to JAC's questions for Ren during the March 26, 2004 conference call. (See Doc. No. 131-18) ("If [JAC] asks about a 10% reduction . . . say NO[,] [b]ut Daming wil[l] give 10% reduction for 1150 car order and Daming insists that Frank cancel order with [CMN].") (See also Doc. No. 128 at ¶32). A reasonable jury could conclude that the representations contained in the March 25th email were those of Bral and Dunbar and that these representations were "intended to interrupt [JAC's] negotiations" and

"prevent the consummation" of a long-term contract with CMN. *Glenn v. Point Park Coll.*, 272 A.2d 895, 899 (1971) (internal quotations and citations omitted).

Bral and Dunbar contend that any deleterious interpretation of the e-mail from Bral and Dunbar to Chen is precluded by statements from Ren's declaration indicating that the threats made by Ren were indeed his all along. (See Doc. No. 114 at 9; see also Doc. No. 115-7 at ¶¶ 10-11). However, JAC has produced specific facts that place the credibility of Ren's declaration at issue. A reasonable jury could find that the final instruction in the email to "have a discussion with Mr. Ren in Chinese and tell Frank they feel very difficult, but they will respond Monday," (Doc. No. 131-18), contradicts Ren's declaration that the threats made by Ren was Ren's "decision alone." (Doc. No. 115-7 at ¶11). Further, Ren's declaration stated that "Daming would have no choice but to stop production of the Johnstown Castings if it found that another foundry in China was making the castings." (Doc. No. 115-7 at ¶10). Yet, as Counterclaimant identifies, Daming did not stop producing casting parts for JAC or complain to JAC after learning that JAC was receiving parts manufactured by other foundries just months later. (See Doc. No. 129 at 10-11). When credibility is "critical to summary judgment," a motion should be denied when a plaintiff has presented a *prima facie* case and sufficient grounds for possible impeachment. See *El*, 479 F.3d at 237; see also *Thompson*, 412 A.2d at 473. The e-mail sent in advance of the conference call could provide sufficient grounds for impeachment at trial, and as such, presents a genuine dispute as to a material fact to be determined by the fact-finder in this case. For these reasons, counterclaim Defendants' motions do not meet the sufficient threshold to find for summary judgment in their favor.

17

### b. Reasonable probability that a prospective contractual relation between Johnstown and CMN would have been established

Counterclaim Defendants also contend that summary judgment should be entered in their favor on Count II because JAC is unable to show that Bral or Dunbar purposely acted to prevent Johnstown and CMN from entering into a prospective contractual relationship. (See Doc. Nos. 117 at 7; 114 at 10). In determining whether a prospective contractual relationship exists, "Pennsylvania courts have considered whether the evidence supports a finding that there was an objectively 'reasonable likelihood or probability' that the contemplated contract would have materialized absent the defendant's interference." *Acumed LLC v. Advanced Surgical Serv., Inc.*, 561 F.3d 199, 213 (3d Cir. 2009) (quoting *Glenn*, 272 A.2d at 898–99). A reasonable likelihood or probability is "something less than a contractual right but more than a mere hope" for a future contract. *Id.* (citing *Phillips v. Selig*, 959 A.2d 420, 428-29 (Pa. Super. Ct. 2008)). Lastly, "a plaintiff must base its claim that there was a prospective contractual relationship on something other than an existing or current relationship," *id.*, such as an unenforceable express agreement or an offer. *U.S. Healthcare, Inc. v. Blue Cross of Greater Phila.*, 898 F.2d 914, 925 (3d Cir. 1990) (*citing Glenn*, 272 A.2d at 900 n. 6). See also *Manning v. Flannery*, No. 2:10-CV-178, 2012 WL 1111188, at *28 (W.D. Pa. Mar. 31, 2012) ("This 'reasonable probability' may result from an unenforceable express agreement, an offer, or the parties' current dealings, but not merely from prior dealings or an existing business relationship between the parties.") (internal citations omitted).

Bral and Dunbar assert that summary judgment is appropriate on Count II because counterclaimant cannot point to any fact that would establish a reasonable probability "that a contractual relationship would have culminated between JAC and CMN." (Doc. Nos. 114 at 10;

117 at 6). JAC disagrees. (See Doc. No. 129 at 11-13). Bral and Dunbar's argument is unpersuasive. JAC points to facts that show that CMN made an offer to supply casting parts manufactured at the same foundry in China for a price substantially cheaper than Bral. (See Doc. No. 129 at 11-12). This fact is undisputed. (See Doc. Nos. 114 at 10-11; 117 at 10-11). Both parties also agree that JAC and CMN engaged in purchase agreements for a limited supply of casting parts throughout the duration of the Supply Agreement. (See Doc. No. 114 at 11; Doc. No. 129 at 12). However, the parties disagree with respect to the effect of these limited purchases through CMN. (Id.) However, a reasonable jury could conclude that JAC would have purchased the substantial majority, if not all, of its casting parts through CMN but for Bral and Dunbar's tortious interference and the Supply Agreement. This conclusion is supported by several facts including those that CMN had made an offer prior to the Supply Agreement, that CMN's price was such that a reasonable jury would conclude JAC would otherwise favor CMN, and that Bral and Dunbar's conduct as supported in the record raise genuine issues of material fact as to whether Bral and Dunbar intentionally influenced or misrepresented Daming's opinion of JAC's relationship with CMN through wrongful means prior to JAC's decision to enter into an exclusive agreement with Bral. For these reasons, Counterclaim Defendants are unable to meet their summary judgment burden on the tortious interference claim.

## c. **Business Competition Privilege**[12]

Bral and Dunbar assert that JAC's claim of tortious interference cannot stand because their conduct is protected by the business competition privilege. (See Doc. Nos. 114 at 6; 117 at

---

[12] The Court notes that Bral's and Dunbar's business competitor privilege argument merely repeats their argument that they did not engage in wrongful conduct because the communications outlined in Johnstown's Counterclaim were Daming's independent statements that accurately reflected Daming's position. See Bral Br. at 6-7; Dunbar Br. at 10-11. The business competitor's privilege argument therefore fails for the same reasons. (See Doc. No. 129 at 11 n.7).

10). "Pennsylvania has adopted section 768 of the Restatement (Second) of Torts, which recognizes that competitors, in certain circumstances, are privileged in the course of competition to interfere with others' prospective contractual relationships." *Acumed LLC*, 561 F.3d at 215. Under section 768,

> (1) One who intentionally causes a third person not to enter into a prospective contractual relation with another who is his competitor or not to continue an existing contract terminable at will does not interfere improperly with the other's relation if:
>
>> (a) the relation concerns a matter involved in the competition between the actor and the other;
>>
>> (b) the actor does not employ wrongful means;
>>
>> (c) his action does not create or continue an unlawful restraint of trade; and
>>
>> (d) his purpose is at least in part to advance his interest in competing with the other."
>
> (2) The fact that one is a competitor of another for the business of a third person does not prevent his causing a breach of an existing contract with the other from being an improper interference if the contract is not terminable at will.

RESTATEMENT (SECOND) OF TORTS § 768. Importantly, Comment e to Section 768 states, "[i]f the actor employs *wrongful means*, he is not justified under the rule stated in this Section. The predatory means discussed in § 767, Comment c, physical violence, fraud, civil suits and criminal prosecutions, are all wrongful in the situation covered by this Section." *Id.*, § 768 cmt. e. The Third Circuit recently determined that it is likely that the Pennsylvania Supreme Court would agree that "for conduct to be wrongful it must be actionable for a reason independent from the claim of tortious interference itself." *Acumed LLC*, 561 F.3d at 215.[13]

---

[13] See also *Assembly Tech. Inc. v. Samsung Techwin Co., Ltd.*, 695 F. Supp. 2d 168, 175 (E.D. Pa. 2010).

Here, wrongful conduct forms the crux of Counterclaimant's allegation of tortious conduct. As discussed above, it is precisely the purposeful actions taken by Bral, Dunbar, and Chen that evidenced how these parties interfered with JAC's prospective business relationship with CMN. Indeed, as was found above, the existence of disputed facts as to whether wrongful conduct pervaded the parties' dealings, necessarily implies that its presence would negate the use of the business competition privilege by counterclaim Defendants. As such, determining the existence of wrongful conduct, and whether its alleged existence contributed to Counterclaimant's averments are issues of fact to which the evidence reflects a genuine dispute among the parties. For these reasons, summary judgment is denied on Count II.

### 4. Counts III and IV: Fraud

Counterclaim Defendants assert that there is no genuine issue of material fact with respect to JAC's claims of fraud (Counts III and IV).[14] (See Doc. Nos. 114, 117). Counterclaim Defendants put forth three arguments in support of their motion: (1) JAC's fraud claim is best characterized as fraud-in-the-inducement, and is barred by the integration clause and the parol evidence rule; (2) JAC cannot, by clear and convincing evidence, establish that Counterclaim Defendant's made material factual misrepresentations; and (3) JAC cannot, by clear and convincing evidence, establish that JAC justifiably relied on any alleged misrepresentations. (See Doc. Nos. 114 at 12-15; 117 at 11-15). The Court addresses each argument in turn.

### a. Count III: Integration Clause and the Parol Evidence Rule

Counterclaim Defendants assert that "[c]ount III of the Counterclaim is actually a fraud-in-the-inducement claim," and support this conclusion based on JAC's allegation in the

---

[14] Again, it is noted that Count III has been alleged against all Counterclaim Defendants, but Chen's motion for summary judgment only addresses this count on the basis of personal jurisdiction and statute of limitations bases. As such, counterclaim Defendant's argument concerning Count III are considered here only for Bral and Dunbar, and not for Chen.

counterclaim that but for the "deceitful and threatening behavior . . . [JAC] never would have agreed to execute the Supply Agreement." (See Doc. Nos. 114 at 12; 117 at 12). Counterclaim Defendants argue that because the Supply Contract contains an integration clause, the alleged fraudulent misrepresentations are inadmissible under Pennsylvania's parol evidence rule.

Under Pennsylvania law, "[o]nce a writing is determined to be the parties' entire contract, the parol evidence rule applies and evidence of any previous oral or written negotiations or agreements involving the same subject matter as the contract is almost always inadmissible to explain or vary the terms of the contract." *Yocca v. Pittsburgh Steelers Sports, Inc.*, 854 A.2d 425, 436-37 (Pa. 2004).[15] Pennsylvania law provides that "[w]hile parol evidence may be introduced based on a party's claim that there was a fraud in the execution of the contract, i.e., that a term was fraudulently omitted from the contract, parol evidence may not be admitted based on a claim that there was fraud-in-the-inducement of the contract, i.e., that an opposing party made false representations that induced the complaining party to agree to the contract." *Yocca*, 854 A.2d at 439, n.26.

As discussed in the Court's prior memorandum denying Counterclaim Defendants' motion to dismiss Count III on the basis of the parol evidence rule (See Doc. No. 98 at 12-15), JAC's counterclaim does not claim that fraud in the inducement was used to arrive at the Supply Agreement. Rather than allege Counterclaim Defendants made intentional misrepresentations to induce JAC to enter into the Supply Agreement, Count III avers that Counterclaim Defendants

---

[15] "[I]t appears that Pennsylvania's parol evidence rule does indeed bar a claim of fraud *where the allegedly fraudulent statement is specifically contradicted by the language of an integrated contract.*" *Regent Nat. Bank v. Dealers Choice Auto. Planning, Inc.*, CIV. A. 96-7930, 1997 WL 786468 (E.D. Pa. Nov. 26, 1997).

engaged in an ongoing and continuous "scheme" to defraud JAC and interfere with JAC's business relationship with Bral's competitor, CMN. (See Doc. No. 72).

As such, the parol evidence rule is not implicated in Count III because this claim is not one for fraud in the inducement. Thus, Counterclaim Defendants' averment that JAC may not use extrinsic evidence to prove fraud in the inducement is, in effect, mooted. Rather, Counterclaimant alleges that the ongoing nature of the misrepresentations evidenced a fraudulent scheme of which the Supply Agreement was a part of a larger series of events. JAC's allegations of how this scheme evolved through its interactions with Dunbar, Chen, and Bral present a genuine dispute as to the material facts of whether a fraudulent scheme existed. Counterclaim Defendants have mischaracterized Count III, and JAC has properly met its burden in evidencing a genuine dispute as to whether a fraudulent scheme existed. For these reasons, the Court denies Counterclaim Defendants' motions for summary judgment of Count III on this basis.

### b. Count III and IV: Material Misrepresentation and Reliance

Counterclaim Defendants further contend that summary judgment should be granted in their favor on Counts III and IV because JAC cannot establish that 1) Counterclaim Defendants made a material factual misrepresentation, and that 2) JAC relied on any alleged misrepresentation. Without making more specific arguments as to the factual allegations contained in Counterclaimant's allegations at Counts III and IV, Counterclaim Defendants argue that the alleged "ghost written" letters are not sufficiently evidenced so as to constitute a material misrepresentation. Further, they contend, any such alleged misrepresentation as to these letters could not provide a sufficient basis upon which JAC could have justifiably relied so as to enter into the Supply Agreement and continue doing business with Counterclaim Defendants. JAC

23

counters that Counterclaim Defendants have misconstrued the counterclaim's fraud allegations at Counts III and IV. Specifically, Count III alleges that all Counterclaim Defendants engaged in a fraudulent scheme over time so as to cause damages to JAC, whereas Count IV alleges that Counterclaim Defendants Bral and Dunbar engaged in fraudulent misrepresentation with regard to the specific tooling charges allegedly passed on to JAC by Daming. For the reasons that follow, the Court will deny Counterclaim Defendants motion for summary judgment on Counts III and IV on these bases.

In order to prove fraud in Pennsylvania, a claimant must prove six elements: (1) a misrepresentation; (2) material to the transaction; (3) made falsely; (4) with the intent of misleading another to rely on it; (5) justifiable reliance resulted; and (6) injury was proximately caused by the reliance. *Laufen Int'l, Inc. v. Larry J. Lint Floor & Wall Covering, Co.*, Civ. A. No. 10-199, 2010 U.S. Dist. LEXIS 41173, *7-8 (W.D. Pa. Apr. 27, 2010) (citing *Santana Prods., Inc. v. Bobrick Washroom Equip., Inc.*, 401 F.3d 123, 136 (3d Cir. 2005)). Under Pennsylvania law, claims of fraud require proof by clear and convincing evidence. *EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 275 (3d Cir. 2010). "A misrepresentation is material if it is of such character that ... had it not been made, the transaction would not have been consummated." *Sevin v. Kelshaw*, 611 A.2d 1232, 1237 (Pa. Super. 1992).

Counterclaim Defendants[16] argue that JAC's fraud claim rests on alleged misrepresentations stemming from the fact that Dunbar, Chen, and Bral "ghost-wrote" letters on Daming letterhead, and that Ren's declaration establishes he was the one who reviewed and approved of the letters. (See Doc. Nos. 117 at 14; 114 at 14). In response, JAC points to several instances of misrepresentation as evidenced by discovery materials. (See Doc. No. 129 at 16-17).

---

[16] Chen's arguments in support of summary judgment as to Count III are limited to statute of limitation and personal jurisdiction arguments. Chen argues that JAC failed to meet its reciprocal burden by showing genuine issues of material fact regarding Count III.

24

In 2003, after receiving a lower price quote from CMN, JAC questioned Bral regarding the price differential. (See Doc. Nos. 101 at 43-44; 42 at 43-44). In response Dunbar, on behalf of Bral, provided documentation to reassure JAC that its $1.23 per pound price was fair. (See Doc. Nos. 101 at 43-44; 42 at 43-44).[17] Bral admits that the documents provided by Dunbar, on behalf of Bral, "did not show the price Bral paid to the Daming Foundry, but rather the price Bral paid to Duncay." (See Doc. Nos. 101 at 50; 42 at 50). This admission directly contradicts Dunbar's representations within the documents. (See Doc. No. 42 at ex. A & B). While Dunbar and Bral deny that Exhibit A is a true and correct copy of the document transmitted to Johnstown, and deny sending the October 29, 2003 letter, these documents clearly and convincingly evidence misrepresentations material to JAC and Bral's continued relationship, of which the fact-finder can make a final determination as to whether fraud existed.

Similarly, there is sufficient evidence in the record to find that JAC can clearly and convincingly prove to a jury that it justifiably relied upon the counterclaim Defendants' material misrepresentations. Specifically, Counterclaim Defendants argue that JAC cannot prove it relied on these alleged misrepresentations because its "undeniable motivation for entering into the Supply Agreement [was] based on maintaining an uninterrupted supply of A/F Parts and avoiding Daming's threat to stop production supply." (Doc. Nos. 114 at 14; 117 at 14). JAC counters in the same vein of arguments as it did for its tortious interference claim; namely, that JAC would have purchased "the vast majority" of the A/F casting parts from CMN but for these material misrepresentations. (See Doc. No. 129). As argued in its responsive CSMF and supported by record evidence, JAC's existing relationship with CMN and other suppliers was primarily on a purchase order basis rather than via an exclusive supply agreement. (See Doc.

---

[17] Dunbar's letter accompanying the documentation stated, "[a]s you can see, this clearly shows that Ningbo Foundry is charging [Bral] a much higher price level than the pricing area you mentioned today. We question the origin and validity of the prices you have been quoted." (Doc. No. 42 ex. A).

25

130, ¶¶ 39, 48, 47). Entry into the Supply Agreement with Bral was a deviation from its business practices as it related acquisition of casting parts, and JAC's contention that this deviation was compelled by counterclaim Defendants' misrepresentations attempts to evidence the presence of fraud in this case. Here, JAC approached Bral with concerns about the prices charged by Bral for casting parts sold to JAC. JAC has presented sufficient evidence such that a reasonable jury could find that Bral responded with several misrepresentations regarding its pricing in an attempt to defraud JAC.[18] As such, this Court finds such evidence of these allegations sufficiently clear and convincing that a jury might be able to determine that there was a fraudulent scheme present. As the parties' arguments on summary judgment make obvious, there is a genuine dispute as to these material facts, and summary judgment cannot lie on Count III for these reasons.

As for Count IV, Counterclaim Defendants do not make any specific argument as to why summary judgment should be entered in their favor as to JAC's claim of fraudulent tooling charges. As JAC has alleged and provided evidence, several facts demonstrate a misrepresentation in the price of Daming's tooling, knowledge of this falsity by Counterclaim Defendants, and the ultimate reliance on the misrepresentation to JAC's detriment. (See Doc. No. 130, ¶¶ 57-71). In its motions for summary judgment, Bral and Dunbar do not even address the allegation of fraudulent tooling, but rather provide a generic, blanket conclusion stating that they "are entitled to summary judgment as a matter of law because no genuine issues of material

---

[18] At the very least, a reasonable jury may find that Bral and Dunbar's communications to JAC, omitting Duncay's existence within their supply chain, constitutes fraudulent concealment. Importantly, "[c]oncealment of a material fact can amount to actionable fraud if the seller intentionally concealed a material fact to deceive the purchaser; however, mere silence without a duty to speak will not constitute fraud." *Viguers v. Philip Morris USA, Inc.*, 837 A.2d 534, 540 (Pa. Super. Ct. 2003). "A misrepresentation is material if it is of such character that ... had it not been made, the transaction would not have been consummated." *Sevin*, 611 A.2d at 1237.

fact exist regarding Count III and IV [sic] of the Counterclaim."[19] (Doc. Nos. 114 at 15; 117 at 15). Because Counterclaim Defendants do not provide any specific basis to directly challenge JAC's allegations of fraudulent tooling at Count IV of the counterclaim, the Court must deny their motion for summary judgment on this basis in addition to those articulated above.[20] As such, the Court finds that the fraud allegations in Counts III and IV of Plaintiff's counterclaim present genuine issues of material facts to be determined by the fact-finder in this case.

### 5. Count V: Unjust Enrichment

Finally, Counterclaim Defendant Dunbar contends that JAC's claim of unjust enrichment (Count V) is subject to summary judgment in favor of Dunbar because no genuine issue of material fact exists.[21] Specifically, Dunbar contends that he is entitled to summary judgment as a matter of law because JAC paid its agreed-to amounts under the Supply Agreement, there was "no benefit conferred upon Dunbar ...." (Doc. No. 117 at 15). In response, JAC contends that its claim for unjust enrichment against Dunbar is proper because one, this Court already found its prior memorandum on a motion to dismiss that "an unjust enrichment claim can exist in the fact of written contract ... if procured by fraud," and two, Dunbar was not a party to the Supply

---

[19] At most, counterclaim Defendants' arguments in this section of their briefs address only JAC's fraud allegations of an ongoing scheme by claiming that it was precisely JAC's continued relationship with CMN that evidences that any alleged misrepresentations by counterclaim Defendants could not have possibly caused JAC to justifiably rely to its detriment. As is explained here, the Court finds this argument unpersuasive.

[20] Importantly, the moving party bears the initial responsibility of stating the basis for its motion and identifying those portions of the record which demonstrate the absence of a genuine dispute of material fact. *Celotex*, 477 U.S. at 323.

[21] While JAC has also asserted a claim of unjust enrichment against Counterclaim Defendant Chen, and while portions of Chen's motion for summary judgment and memorandum of support of summary judgment include Count V in some of the headings, Chen does not make a specific argument in favor of why summary judgment on Count V should be entered in his favor. For this reason, there is no basis before the Court to consider an entry of summary judgment in favor of Chen on the issue of unjust enrichment. Analysis here is limited to Counterclaim Defendant Dunbar and his argument set forth in his memorandum of support of summary judgment (Doc. No. 117).

27

Agreement, but nonetheless unjustly benefited from Bral's fraudulent scheme. (Doc. No. 129 at 20-21).

Under Pennsylvania law, a successful claim of unjust enrichment requires proof that (1) [the] plaintiff conferred a benefit on the defendant; (2) the defendant appreciated the benefit; and (3) acceptance and retention by the defendant of the benefits, under the circumstances, would make it inequitable for the defendant to retain the benefit without paying for the value of the benefit." *Century Indem. Co. v. URS Corp.*, Civ. A. No. 08-5006, 2009 WL 2446990, at *5 (E.D. Pa. Aug. 7, 2009) (citing *Stoeckinger v. Presidential Fin. Corp. of Del. Valley,* 948 A.2d 828, 833 (Pa. Super. Ct. 2008)). Importantly, "the quasi-contractual doctrine of unjust enrichment [is] inapplicable when the relationship between parties is founded on a written agreement or express contract." *Harris v. Homecomings Fin. Serv., Inc.*, 377 F. App'x 240, 244 (3d Cir. 2010) (quoting *Benefit Trust Life Ins. Co. v. Union Nat. Bank of Pittsburgh,* 776 F.2d 1174, 1177 (3d Cir. 1985)) (internal citations omitted). Thus, whether the doctrine of unjust enrichment applies "depends on the unique factual circumstances of each case. In determining if the doctrine applies, courts focus 'not on the intention of the parties, but rather on whether the defendant was unjustly enriched.'" *Stoeckinger,* 948 A.2d at 833 (quoting *Styer v. Hugo,* 619 A.2d 347, 350 (Pa. Super. Ct. 1993)). Lastly, a successful claim of unjust enrichment requires a plaintiff "confer benefits on a defendant; it does not require that [the] plaintiff 'directly confer' those benefits." *Century Indem. Co. v. URS Corp.*, Civ. A. No. 08-5006, 2009 WL 2446990, at *5 (E.D. Pa. Aug. 7, 2009) (quoting *Baker v. Family Credit Counseling Corp.,* 440 F. Supp. 2d 392, 420 (E.D.Pa.2006) (citations omitted)).

Counterclaim Defendants assert that there is no genuine issue of material fact with respect to JAC's claim of unjust enrichment (Count V). Specifically, Dunbar[22] argues that Counterclaimant "cannot demonstrate the existence of a genuine issue of material fact concerning" unjust enrichment because (1) JAC "merely paid the contractual amounts that it was obligated to pay under the Supply Agreement" and (2) unjust enrichment actions are prohibited where a contract governs the conferred benefit. Dunbar's argument is unpersuasive. As JAC rightfully contends, (see Doc. No. 129 at 20), the Supply Agreement does not govern the conferred benefit as to Dunbar because Dunbar was not a party to the Supply Agreement. Under Pennsylvania law, when a third party to a contract receives a benefit therefrom after misleading the other parties, a claim of unjust enrichment is appropriate. See generally, *D.A. Hill Co. v. Clevetrust Realty Investors*, 524 Pa. 425, 434, 573 A.2d 1005, 1010 (Pa. 1990) (holding "subcontractors could not recover on an unjust enrichment theory because, assuming that [the lender foreclosing on the property] was enriched, it was not *unjustly* enriched . . . a third party is not *unjustly* enriched when it receives a benefit from a contract between two other parties where the party benefitted *has not requested the benefit or misled the other parties*.") (emphasis added).

Here, JAC not only contends that Dunbar and Chen received benefits from the Supply Agreement, but also that Dunbar and Chen received benefits from a scheme designed to defraud JAC and interfere with a business relationship. As discussed in detail above, JAC has alleged and supported facts sufficient to raise a genuine issue as to whether Chen and Dunbar

---

[22] Notwithstanding his arguments regarding personal jurisdiction, Chen did not support his motion for summary judgment as to JAC's claim of unjust enrichment until filing his reply brief (to JAC's opposition to Chen's Motion for Summary Judgment) on August 13, 2012. (See Doc. No. 138 at 6). While not properly before the Court as required by a movant's initial burden on summary judgment, (see *supra*, notes 5, 11), Chen's reply argument is nonetheless functionally similar to Dunbar's argument. (See Doc. No. 138 at 6) ("Comparing pricing for A/F Parts from Bral with price quotes from a competitor provides no basis for an unjust enrichment claim."). Although Chen avoids the pitfall of directly relying on the fair fulfillment of the terms of the contract, this argument is equally unpersuasive given Chen was not party to the contract.

participated in such a scheme and a reasonable jury may conclude that it would be inequitable for Chen and Dunbar to retain benefits from their alleged misrepresentations. As such, factual disputes as to the fraudulent scheme and whether the use of alleged improper conduct resulted in the conferral of a benefit upon Dunbar was unjust is a matter for further determination by the fact-finder. For these reasons, Dunbar's (and Chen's) motion(s) for summary judgment on JAC's claim of unjust enrichment is denied.

## VI. CONCLUSION

As the Court determined in its prior memorandum, there are genuine disputes as to several material facts present in this case. Here, counterclaim Defendants have attempted to argue that summary judgment is appropriate for all counts alleged in JAC's counterclaim. Similar to the Court's determination on the parties' motions to dismiss, the Court disagrees with the assessment that no genuine disputes as to any material facts exist. Rather, as discussed in this Memorandum, several disputes on each count require determination by the fact-finder in this case. Thus, for the above reasons, the Court **DENIES** each Counterclaim Defendants' motion for summary judgment. An appropriate order follows.

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| BRAL CORPORATION, | ) |
| | ) |
| Plaintiff/Counterclaim Defendant, | ) |
| | ) |
| v. | ) |
| | ) |
| JOHNSTOWN AMERICA CORPORATION, | ) CIVIL ACTION NO. 3:08-232 |
| | ) JUDGE KIM R. GIBSON |
| Defendant/Counterclaimant, | ) |
| | ) |
| v. | ) |
| | ) |
| KEITH DUNBAR *and* CHRISTOPHER CHEN, | ) |
| | ) |
| Counterclaim Defendants. | ) |

## ORDER

**AND NOW**, this 22nd day of January, 2013, this matter coming before the Court on the

Motions for Summary Judgment of Counterclaim (Doc. Nos. 112; 116; 119) filed by

Counterclaim Defendants Bral Corporation, Keith Dunbar, and Christopher Chen, pursuant to

Federal Rule of Civil Procedure 56, and Johnstown America Corporation's opposition to the

motions (Doc. Nos. 127; 129), **IT IS HEREBY ORDERED** that all motions for summary

judgment by Counterclaim Defendants Bral, Dunbar, and Chen are **DENIED**.

BY THE COURT:

**KIM R. GIBSON,
UNITED STATES DISTRICT JUDGE**

31